†JOHN P. FREEMAN v. SAMUEL A. HUNTER, TREAS., ET AL.

WILLIAM W. EARL ET AL v. SAMUEL A. HUNTER, TREAS., ET AL.

DAMAGES TO ABUTTING OWNERS MUST NOT BE INCLUDED IN THEIR ASSESSMENTS.

The city of Toledo, having provided for the improvement of its streets by changing the grade thereof, and for grading it to the changed grade, the plaintiffs, being owners of property abutting on the improvement, and who had improved their said property with reference to a former duly established grade of the street, duly filed their claims for damages to their said property, by reason of said improvement, and, on application by

---

†These cases were affirmed by the supreme court, on the ground that the ordinance of July 18, 1889, did not indicate an intention on the part of the city to assess on the abutting property any part of the costs included in the assessment ordinance of October 27, 1890; nor was any opportunity given the parties assessed to be heard on or in opposition to the same. 51 O. S., 574. Denied in Thale v. Cincinnati, 3 Ohio Dec., 131, 133. Cited in Toledo Bending Co. v. Mfr's Ry. Co., 3 Ohio Dec., 430, 435.

the city, a jury was empaneled in the probate court for the inquiry and assessment of damages in said matter; and the jury, by their verdict, awarded damages in certain amounts to the plaintiffs and other abutting property owners, which verdict was con-firmed by the probate court; and the city thereupon paid the amount of the awards into said probate court for the use of plaintiffs and the other claimants respectively, and also paid the costs of said proceeding in the probate court; and thereafter, by ordinance, levied the amount thus paid for awards and costs and expenses and interest thereon upon the abutting lots and lands, including the lots of the plaintiffs as to which said damages had been awarded. Held, that the city had no constitutional power to make such levy upon the plaintiffs' said property.

### Error to the Court of Common Pleas of Lucas County.

BENTLEY, J.

These two cases present substantially the same questions, and, by agreement of counsel, were submitted and will be disposed of together. The plaintiffs in each case are owners of improved lots abutting on Erie street, in the city of Toledo (a city of the third grade of the first class).

On April 3, 1889, the common council of the city passed a resolution declaring it necessary to improve Erie street from the north-east line of Adams street to the north-east gutter line of Orange street, by grading the same to its full width to the established grade according to the plans and specifications on file in the office of the city engineer. The resolution contained the provision: "All persons claiming damages for the foregoing improvement must file their claims therefor within four weeks from the first publication of this resolution or within twenty days after service of written notice of the passage of the same."

Said resolution being duly published, the plaintiff and other abutting property owners, filed their respective claims for damages to their said property.

On July 18, 1889, the said council passed an ordinance providing for said improvement, of which ordinance sections 2 and 3 read as follows:

"Section 2. That the cost and expense of said improvement, except such parts as are provided for in section 2274, Revised Statutes, as amended March 19, 1889, shall be levied and assessed upon the lots and lands bounding and abutting upon said improvement in proportion to the foot front; and said assessment shall be payable in two installments to the contractor or assigns, one half in ten days after the passage of the assessment, remainder in one year thereafter.

'Section 3. That the claims for damages filed with the clerk on account of said improvement shall be judicially inquired into before letting the contract for the proposed improvement."

On July 23, 1889, the city made application to the probate court for a jury to assess compensation and damages on account of said proposed improvement and in due course of the proceedings thereupon had in the probate court, a jury returned a verdict in favor of several claimants for damages, including the plaintiffs, for various respective sums, but aggregating $10,684.50.

The award in favor of the plaintiff, Freeman, was $500; and that in favor of the plaintiffs in the Earl case aggregated $1,200; no "compensation," technically, for property appropriated being assessed.

Thereafter, on October 22, 1889, the said verdicts were confirmed by said probate court, which entered judgments therein against the city in favor of the several claimants respectively, for their respective amounts, and also rendered judgment against the city for the costs of said proceedings in the probate court; all of which awards and costs, the city, on December 6, 1888, paid into said probate court for the use of the several parties entitled thereto, in cash; no interest on said sums being paid by the city.

On March 24, 1890, the city let the contract for making said improvement and therein provided that the part thereof chargeable to the city shall be paid in cash on the completion and acceptance of the work, and that for the residue of the contract price there should be made a valid assessment upon the lots and lands bounding and abutting on said improvement, payable to the contractor, one-half in ten days after the assessing ordirance, and the rest in one year thereafter, and that said contractor should receive said cash and assessments as full compensation for all work done under said contract.

Said improvement being completed by the contractor on or about August 16, 1890, and so reported by the city engineer, the council on September 8, 1890, having paid that part of the contract price and expenses proper, of said improvement, falling to the city to pay, assessed the entire residue thereof upon said abutting property in proportion to the foot front, by an ordinance of that date, providing that said assessments should be paid to the said contractor within ten days therefrom. This assessment was paid in full by the respective plaintiffs; but this assessment did not include said awards for damages nor the costs in the probate court on said inquiry. Some time after the making of said assessment,

the city engineer reported to the council a statement showing the aggregate of such awards and costs and expenses in said probate as follows:

| | | |
|---|---|---|
| Awards | $10,684 | 50 |
| Court costs | 352 | 47 |
| Expert witness fees | 363 | 00 |
| Interest | 1,068 | 45 |
| Total | $12,468 | 42 |

And he accompanied the statement with an estimate and recommendation for an assessment upon said abutting property to pay said total amount of five dollars per foot front; and afterwards, on October 27, 1890, the common council of the city passed an ordinance making said assessment and providing that the owners of said property should pay the said assessment on their respective parcels of real estate, "to the treasurer of Lucas county, at the same time and in the same manner as other taxes are paid, or be subject to the interest and penalty allowed upon the same," and directing the city clerk to certify to the county auditor to be placed on the tax duplicate fifty per cent. of said assessment in the year 1890 and the remainder in the year 1891.

This certificate for said fifty per cent. was made by the clerk to the auditor, after October 27, 1890, and before the auditor had actually delivered the duplicate to the county treasurer for collection, but after the time fixed by law for such delivery, namely, October 1, 1890, and the auditor entered the assessment in the duplicate. The amount of said damages awarded to the plaintiffs respectively exceeded their respective assessments. The taxes and assessments admitted to be lawful were tendered to the treasurer before bringing these actions, and the plaintiffs now seek to enjoin the collection of said assessments of October 27, 1890, and the charging of penalties upon other taxes and assessments, by reason of its non-payment.

The plaintiffs claim that the allowance of said assessment is in conflict with the Fourteenth Amendment to the Federal Constitution, which provides against any state depriving any citizen of his property without due process of law; and that said assessment is also forbidden by the constitution of Ohio, especially by sec. 19, Art. I, and sec. 5, Art. XIII, which provide against the taking of private property for the use of the public, or of corporations, without compensation.

Independently of these claims, the plaintiffs also urge:

1. That the auditor had no power to put said assessment on the duplicate of 1890, after October 1, 1890.

2. That said expenses for expert witnesses which were not allowed as costs proper in the probate court, cannot be regarded as any part of the costs and expenses of said improvement which can be assessed on property owners.

3. That said interest was illegally included in the assessment.

4. That even granting the power of the council originally to have assessed for any or all of said items, it did not determine to do so at the proper time; but, on the contrary, indicated by its action that it would not so assess them, and exhausted its power of assessing the costs and expenses of said improvement in making its said assessment of September 5, 1890.

5. That in making said assessment of October 27, no portion of the costs and expenses therein included was assessed against the city itself on account of street intersections, or otherwise, and that the assessments are therefore excessive.

The question as to the constitutionality of the proceedings whereby these assessments were made, being of prime importance, will be first considered.

There are no direct averments in the petitions in these two cases that prior to the improvement therein mentioned said Erie street had ever been graded to an established grade, nor that the property of the plaintiffs had ever been improved with reference to any prior established grade, but, as damages were claimed and judicially allowed, we must assume that the facts necessarily at the basis of a legal claim were shown, and that a grade differing materially from the one mentioned in said improvement resolution and ordinance had been long theretofore established, and that the plaintiffs had improved their said property with reference to it. Indeed, the assessing ordinance itself recites that it is for "the cost and expense of change of grade,"

The right of the plaintiffs to the use and enjoyment of their improved property, in connection with and with reference to said street at the grade with reference to which the property had been improved, has been several times held by our Supreme Court, to constitute property, and which may not be interfered with, destroyed or taken for public purposes without compensation to the owner. Rhoades v. Cleveland, 10 O., 160, 161; McComb v. Akron, 15 O., 475, 481; Akron v. McComb, 18 O., 229, 232; Crawford v. Delaware, 7 O. S., 460, 466; Youngstown v. Moore, 30 O. S., 133; Keating v. Cincinnati, 38 O. S., 141, 148; Railway v. Gardner, 45 O. S., 309, 318-9.

If this species of property were, in the ordinary sense, a material substance, no consideration of any beneficial effect of the improvement could affect the compensation to be paid to the owner; but its nature is such that in order to determine whether any and how much of it will be taken by a change of grade, one must determine how many of its constituents will be left after the change has been effected, and the difference between this residuum and the original aggregate of rights is really the property which may be said to be taken for public uses.

From the very nature of the inquiry, therefore, it is manifest that special benefits conferred by the improvement' or change, upon the abutting property, kindred to those theretofore attaching to it, must be considered in determining the quantum of property taken or of rights invaded. The terms which would define the appropriated property itself are so synonymous with, or so intimately associated with the expressions which would describe or express its value that the questions as to what property is taken and as to its value, are practically inseparable. See C. & P. R. R. Co. v. Ball, 5 O. S., 568-578-9. By our constitution and practice this value, at least, must be determined by a legal jury and we must assume that the jury which fixed the damages accruing to the property of these plaintiffs by reason of this improvement, took into account the concurrent injuries and special benefits, and after applying the value of benefits upon the gross amount of injuries, found an overplus of injury to the exact amount of their award.

Can this amount, or any part of it, be, by the city assessed back upon the same property?

The power of local assessment is not denied by the constitution of Ohio, but is recognized by it [Art. XIII, sec. 6], and is upheld upon the principle that the property assessed has been specially · benefited by the enterprise for which the assessment is levied in an amount at least equal to the assessment. Hill v. Higdon, 5 O. S., 243, 248; Meissner v. Toledo, 31 O. S., 387, 393; Chamberlin v. Cleveland, 34 O. S., 551; Wewell v. Cincinnati, 45 O. S., 407, 424.

This must always be the rule and test in theory at any rate. In the practical application of the rule, actual injustice may be, and often is done to individuals, as, for instance, in case of assessment by foot front, some lot is so situated as to fall within the assessment lines though not in fact benefited at all or benefited to an amount grossly less than some other bearing an equal assessment. And even where assessments are made in proportion to valuations on the tax duplicate, inequalities may result by reason of some injustice or misfortune in fixing taxable valuations. And also where it is determined to assess according to benefits, inquiry may be actually prejudiced or misled, and actual injustice result to some, but this arises out of the unavoidable inadequacy of general rules or the infirmity to which all administration is liable. But no special assessment can be upheld unless it may be conceived, at least theoretically, to be based upon corresponding special benefits without doing violence to acknowledged precepts of law.

Had there been no damages asked by and awarded to the plaintiffs, the assessment upon this property for the improvement of the street upon which their lots abut, and the reasonable and actual costs and expenses incurred in appropriating rights and property necessarily involved therein, would have been presumed to have been determined by the council as not in excess of the special

benefits conferred upon the property, and such determination would be final unless some fraud or mistake could be shown; but where damages are claimed, and there is a legal basis for their allowance, the amount thereof, or whether any, must be determined by a jury, and its finding as to the matters necessarily submitted to it, is conclusive upon the city. We know of no element of special benefits accruing to abutting property which could be used to support a special assessment that could not or should not be considered by the jury in determining the fact and quantum of damages; and so, if any damages are awarded by the jury, it must be presumed that after allowing for all special benefits the net effect of the improvement upon the particular property is to injure its value to the amount of the award. When the jury have thus used the special benefits to lessen the sum which would otherwise be due to the lot owner, there is no just right or constitutional power to make them again the basis for an assessment against the same property for the net injury inflicted upon it or any part thereof, and, *a fortiori,* there can be no power to assess upon it in addition any part of the net damages inflicted by the same improvement upon other lots and lands and similarly found and fixed by the same jury.

The same reasoning would apply to interest on such damages and the costs of ascertaining them in the probate court. There can be no valid reason for subjecting a lot to the payment of the cost of ascertaining how much it had been injured when it appears that such injury exceeds all benefits. The requirement of the constitution is that the property owner shall be made whole for his loss when his property is appropriated or taken for public use, and it would be but a mockery of the solemn guaranties of the constitution to allow and pay him for it one moment, and the next moment, and by the same impulse of the sovereign energy, wrest it from him, or burden with its repayment the same lands in respect to which it was allowed.

A plain infraction of the engagements of the constitution may be accomplished though the form of the act be so managed as not to appear to directly violate its precise terms. Crawford v. Delaware Village, 7 O. S., 460, 471.

We hold that the assessments complained of in these cases, if enforced, would effect the taking of the plaintiffs' property for public purposes without compensation to them therefor, and that they are therefore void.

It is not necessary that we declare sec. 2284 Rev. Stat. unconstitutional, as allowing such assessments, since in many, and perhaps in most cases, it may have a valid operation, and, under the rules of law, should receive such construction, if possible without doing manifest violence to its language and purpose, as to allow it an operation within the constitutional restrictions. Were it not susceptible of such interpretation and legal operation, it would violate the provisions of the 14th amendment to the constitution of the United States, since it cannot be a due process of law which provides for a requisite inquiry of damages by a jury and at the same time, in direct effect, nullifies the finding of the jury and denies to their verdict the conclusiveness upon the questions necessarily involved in it which the judgments of all courts and the books of law-writers have with unvarying uniformity always ascribed to it.

But it is said in Adler v. Whitbeck, 44 O. S., 539, 568: "It is apparent from the terms employed, that the clause incorporated by this amendment in the federal constitution imposes no limitation upon the legislative power of the general assembly of this state that had not been imposed by its bill of rights."

The constitution of the state of Ohio, art. I, sec. 15, requires the value of property taken for the public welfare to be assessed by a jury. This has been declared to mean a jury of twelve men presided over by a court, and that the law which provides for the taking of private property must also provide for the constitutional ascertainment of the compensation to be paid to the owner, since the constitution does not, in this regard, execute itself. Lamb v. Lane, 4 O. S., 167.

The constitution also provides, art. XIII, sec. 6, that the general assembly shall restrict the power of assessment by municipal corporations, so as to prevent an abuse of such power.   In Chamberlain v. Cleveland, 34 O. S., 562-3, it is held that this clause of the constitution is mandatory and restrictive.   Certainly, a law which would sanction an assessment upon property to pay the excess of damages over benefits which a jury, provided for by the same law and guaranteed by the constitution, had just declared to result to that property from an improvement, would not indicate that the legislature had observed that imperative mandate of the constitution, but the contrary.   Such assessments would constitute that abuse of power which the legislature should have prevented; and the mandate, though addressed to the legislature, is, nevertheless, the recognition of private right which, the legislature failing, must be protected by the courts.   Holding the assessments void for the reasons stated, it is unnecessary for us to pronounce upon the other questions made.   The case of Cook v. Toledo, decided by this court March, 1891, referred to by counsel, did not make the point here decided.

It determining the questions involved in these cases, we are not unmindful of the decision of the Supreme Court in the case of Wick v. Cleveland, 18 O. S., 304; but we do not regard that case as deciding the points here made, and we doubt whether the supreme court would be willing to extend the principle applied in that case to such facts as are here under consideration.

The decree will be for the plaintiffs in each case.

Brown & Geddes, and Thomas Dunlap, for plaintiffs.

W. H. A. Read, City Solicitor, for defendants.

NOTE.—Since delivering the above opinion, our attention has been called to the case of Davis v. Newark, decided by the court of errors and appeals of New Jersey, 25 Atl. Rep., 336, holding the same views above expressed.

---

# FEES AND COSTS.                                                      128